## In re BANKER'S CAPITAL CORPORATION.

## In re BANKER'S CAPITAL CO. OF CONNECTICUT.

District Court, S. D. New York.
July 20, 1931.

Edwards, Murphy & Minton, of New York City (Milton P. Kupfer, George F. Mara, and Phillip W. Haberman, all of New York City, of counsel), for various reclaim-

ing creditors. Powell Crichton, of New York City, for reclaimant, Monfried & Warner, of New York City, for reclaimant, and Charles G. Chamberlin (Harry Loeb Mostow, of New York City, of counsel), in support of petitions for review.

Breed, Abbott & Morgan, of New York City, by Gerald J. Craugh, of New York City, for trustee in matter of Banker's Capital Corporation, and Chaffee, Dawson & Shealy, of New York City (William B. Shealy, of New York City, of counsel), for trustee in matter of Banker's Capital Company of Connecticut, in opposition thereto in their respective matters, in support of the petition of the trustee of the Connecticut Company in the proceeding of the New York Company.

### WOOLSEY, District Judge.

The petitions to review in these two proceedings in bankruptcy are denied, and the orders of the referee which the several petitions sought to review are in all respects confirmed.

I. On a previous petition to review in connection with the reclamation claims of Taylor and Hill, in the matter of the Banker's Capital Company of Connecticut, No. 47883, I made a memorandum on the papers on April 27, 1931, granting the petitions to review those two reclamation proceedings, and also stated in the same memorandum that the Jensen claim had been withdrawn at the argument and so might stand as dismissed. There was not any order entered on this decision.

I was requested to reconsider it in connection with the other reclamation proceedings in the case of Banker's Capital Company of Connecticut, No. 47883, and in the Banker's Capital Corporation, No. 47847, and I granted this request.

After again studying the report of the referee in those reclamations and in the others now first before me, and after reading all the cases cited by counsel for all parties, I have come to the conclusion that the result reached by the referee was right.

I regret that pressure of time prevents my writing a more extended opinion in connection with this interesting matter, but to do so would take more time than I have now available.

■ II. The Banker's Capital Corporation, hereinafter called the New York Company, owned all the stock of the Banker's Capital Company of Connecticut, hereinafter called the Connecticut Company; the same men were officers of the two companies.

All purchases of securities were made by the Connecticut Company from the New York Company, to which the Connecticut Company was indebted in the sum of more than $613,000 at the time of the bankruptcy of the New York Company.

The referee was quite right, therefore, in dismissing the reclamation filed in behalf of the Connecticut Company.

III. Between the outside reclaimants—i. e., those who bought securities from the two companies—and the bankrupts, the relationship was not that of customer and broker, but that of buyer and seller of securities.

When they first came into contact with each other, the buyer and the bankrupt were dealing at arm's length with an executory contract for sale, and there was not any fiduciary relationship between them.

The real question here involved is whether as a result of their subsequent dealings this relationship changed. I think that it did not.

■ Owing to the fact that the reclaimants here had all of them paid their money, my first impression was that it would be unjust to have the trustee keep the stock for the estate and the benefit of general creditors, but, on reflection, I have decided that this apparent injustice is merely illusory, for the reason that when, in the relationship of purchaser and vendor with the bankrupts, the purchasers of the stock paid money before they got their stock, it simply meant that they were trusting the credit of their vendor for goods, viz. stock, which he was subsequently to deliver to them.

It therefore leaves the situation like any other case where the persons have given credit, and it has turned out unwise to have done so.

■ The relationship between the parties might have changed from that of buyer and seller on an executory contract of sale to that of bailor and bailee if title to any of the stock had passed to the buyers on proper allocation by the seller to their respective contracts. But the method of passing of title to stock is prescribed by section 162 of the Personal Property Law of New York (Consol. Laws, c. 41) and by section 1 of the Uniform Stock Transfer Act, in so far as Connecticut is concerned (see, also, Gen. St. Conn. 1930, § 3429).

The required steps to pass title to the stock were never taken by the bankrupts.

Consequently none of the original executory sales contracts ever changed into the relationship of bailor and bailee as between purchaser and seller.

The only question remaining, therefore, is whether, after notice of the sale of a certain security was given by the seller to the buyer, the status previously existing of buyer and seller under an executory contract was changed into a relationship of a fiduciary nature, i. e., of beneficiary and trustee, under the decisions of Beardsley v. Beardsley, 138 U. S. 262, 266, 11 S. Ct. 318, 34 L. Ed. 928, and Currie v. White, 45 N. Y. 822.

I think that such a relationship did not arise.

There were here merely breaches of contracts for sale which left the reclaimants in the position of general creditors.

I think a case which is similar in principle to that now before me is Marshall v. Roettinger, 294 F. 158, 160, 161 (C. C. A. 6th), where it is laid down that, in spite of the fact that reclaimants may have paid money for goods which the bankrupt had to sell, and although, when the bankruptcy occurred, the bankrupt had such goods on hand, if the goods had not been allocated to the sales contracts of the respective purchasers, they must go to the trustee in bankruptcy as part of the general estate, and the purchasers must be relegated to the status of general creditors.

Settle orders on two days' notice.